Spalding, J.
The motion in this case has been considered in connection with one of a similar character reserved in the county of Wyandot, in the absence of the chief judge, who was called! home by reason of sickness in his family.
The decision is made by the three remaining members of the court, who are all clearly of the opinion that the motion to dissolve the injunction, allowed in the common pleas, is irregularly ^before this court, and that the same should be dismissed for want of jurisdiction.
The constitution of Ohio, in force at the time of the special enactment of March 24, 1851, provides, that the Supreme Court shall have original and appellate jurisdiction, both in common law and chancery, in such cases as shall be directed by law ; that the court of common pleas shall have common law and chancery jurisdiction in all such cases as shall be directed by law.
Section 1 of the act directing the mode of proceeding in chancery provides, that the court of common pleas shall have jurisdiction in all cases properly cognizable by a court of chancery, in which plain, adequate, and complete remedy can not be had at law.
Section 2 provides, that the Supreme Court shall have con-* current jurisdiction with the courts of common pleas, in all cases properly cognizable by a court of chancery, where the title to, or any contract in relation to land is in question, or the sum or matter in dispute exceeds one thousand dollars in value ; and appellate jurisdiction in all cases regularly brought before them from the chancery decisions of the court of common pleas.
Section 50 provides, that the Supreme Court, or any judge thereof, and the court of common pleas, or any president judge thereof, may allow injunctions in all cases, where it is usual for courts of equity to interfere by injunction, on petition filed, show *526 ing good cause in equity for such injunction, and verified by affidavit.
The bill in the case was regularly filed in the court, of common pleas of Crawford county; which court had undoubted jurisdiction, under our constitution and laws. That court, or the presi. dent judge thereof, allowed an injunction, “ on petition filed, show-! ing good cause in equity, and verified by affidavit.” The cause is still pending there, awaiting a trial upon its merits.
The common pleas having obtained jurisdiction, it follows, as a *necessary consequence, that the only jurisdiction which this court can take of the cause, under the constitution, is by appeal. Our original jurisdiction (if the amount involved is sufficient to give the two courts current jurisdiction) is gone, by reason of the complainantshaving elected to file their bill in the common pleas. The fifty-second section of the practice act provides, that any person may appeal to the Supreme Court for any final sentence or decree pronounced in any suit in chancery, in the court of common pleas, on giving notice, etc. The time, therefore, has not arrived for the exercise of our appellate jurisdiction in this case. We can not, and will not, interfere with the constitutional powers of the common pleas, which are, in their own proper sphere, as sacred as those that appertain to this tribunal. If, however, we may rightfully take cognizance of this motion, we are at a loss to see what possible good can result from it. Upon the supposition that we allow the motion to prevail for the dissolution of the injunction, there is nothing to prevent the court of common pleas from making another, and repeated orders, enjoining the party, so long as they have possession of the cause. The most casual observer will see that this would end in a clashing of jurisdiction, that would be simply ridiculous; and this might be the least of its evil consequences. We think the legislature improvidently passed the act allowing this motion to be filed in the Supreme Court while the cause was yet depending in the common pleas, and that they have failed to give to this court that sort of jurisdiction which is recognized and required by the constitution. The motion will therefore be dismissed, with costs.
In making known this determination of the court, I claim the right to say, that no one can regret more than myself that the case was not presented in such a shape as to enable us to decide the second point made by complainants’ counsel. Without commit *527 ting this court, or any member thereof other than myself, to any particular construction of that sort of legislation which enables a majority in a county to vote the property of the minority into a joint-stock company, I can not forbear the ^remark, that it seems to me, not only a violation of the essential principles of liberty and free government, but in direct derogation of section 4, articles, of the late constitution of Ohio: “Privateproperty ought and shall over be held inviolate, but always subservient to the public welfare, provided a compensation in money be made to the owner.” It is an important matter to know whether the security of the citizen and the safety of his property rest in the discretion of the legislature, or in the guaranty of the constitution.
Much of the curious speculation afloat, in regard to the absolutism of legislative power in these American states, is drawn from the notions formerly entertained of the British parliament. According to Lord Coke, “the power and jurisdiction of parliament is so transcendent and absolute, that it can not be confined, either for causes or persons, within any bounds. Of this high court,” he adds, “it may be truly said, si gntiquitatem species, est vetustissima; si dignitatem est honoratissima; si jurisdictionem, est capctcissima.” This is very far from being the case with our state legislatures. Wo all ought to know and feel, that in this country there is no absolute sovereignty except that which resides with the body of the people.
Legislative bodies are, at best, nothing more than limited agencies, constituted by the peoj)le for their own convenience, in carrying on the necessary functions of civil government. They have a right to tax the people for the ordinary expenses of the government. They havo a right, under the constitution, to take private property for public use, by paying a compensation in money to the owner. But they have no right to say themselves, much less to give to one class of the people the right to say, that another class shall be taxed on their property to support stage, steamboat, or railroad transportation.
It need not be denied that railroads are, in many instances, public improvements of great usefulness. But because they accommodate individuals and advance the public interest, it will not do to say that they are such a public use that private *property may be taken, without the consent of the owner, to construct them. If an incidental benefit, resulting to the community from *528 the manner in which individuals, in pursuit of their own interestr use their property, will constitute a public use of it, it will be found extremely difficult to set bounds to the power of appropriating private property. As it is only on the plea that railroads are public highways—in other words, “a public use”—that the right is claimed to legislate a man’s money from his pocket "to make them,, whether he desire or not to take part in the work*
I have no uncommon sympathy for that class of our population who will suffer most by this internal improvement piracy ; but if the rights of minorities are not observed, it will not be long before the majorities will be in bondage. I look upon this thing of taking private property, or subjecting it to unusual burdens without the consent of the owner^as a great stride toward despotic power. The people of a county, by the vote of a majority, have no more right, under legislative sanction, to say that a single unwilling citizen shall mortgage his farm to build a railroad through their district, than they have to say he shall help support a line of stages running through the same territory.
It will not do to talk about the:, discretion of the legislature in this matter. The framers of our constitution took care to insert a clause, at the close of the last article, which is pregnant with meaning: “ To guard against the trangression of the high powers which we have delegated, we declare that all powers not hereby delegated remain with the people.” Amongst the most important of those powers remaining with the people, is, in my.apprehension,, the right of every citizen to manage his own private property in his own private way.
Motion dismissed for want of jurisdiction.
Hitchcock, C. J., prepared an opinion dissenting from some of the principles maintained above, for which see Appendix A.